UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11608-GAO

JOSEPH BONFIGLIO, as he is TRUSTEE, NEW ENGLAND LABORERS' TRAINING TRUST FUND; LOUIS MANDARINI, JR., as he is TRUSTEE, MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND; JAMES MERLONI, JR., as he is TRUSTEE, MASSACHUSETTS LABORERS' PENSION FUND and MASSACHUSETTS LABORERS' LEGAL SERVICES FUND; MARTIN F. WALSH, as he is TRUSTEE, MASSACHUSETTS LABORERS' ANNUITY FUND,
Plaintiffs,

v.

WALSH CORP.,
Defendant,

and

BANK OF AMERICA,
Trustee.

FINDINGS OF FACT and CONCLUSIONS OF LAW, and
ORDER FOR JUDGMENT
September 19, 2011

O'TOOLE, D.J.

The plaintiffs are trustees of benefit plans all of which are within the scope of the Employee Retirement Income Security Act ("ERISA"). They bring this action against the defendant, the Walsh Corporation ("Walsh"), to remedy purported violations of ERISA and the Labor Management Relations Act ("LMRA"). Having conducted a bench trial on the matter, the Court now makes the following findings of fact and conclusions of law.

The defendant is a Massachusetts company engaged in the construction business. It is an employer engaging in commerce within the meaning of ERISA, 29 U.S.C. § 1002(5) and (12).

The plaintiffs are trustees of ERISA benefit plans (collectively, the "Funds") that provide, among other things, health, dental, and defined pension benefits. The Funds are "employee welfare benefit plans" or "employee pension benefit plans" as those terms are found in 29 U.S.C. § 1002(1) and (2).

In March 2005, the defendant agreed to be bound by the terms of the Restated Agreements and Declarations of Trust and by the terms of related collective bargaining agreements (collectively, the "Agreements"). The Agreements provide that the defendant must make certain contributions to the Funds.

The defendant was obligated to make these contributions in a specific manner. Specifically, it was required to submit monthly remittance reports which would describe the number of hours worked by each employee in the previous month. The defendant was to deduct working dues at a rate of $1.20 per hour from its employees' paychecks, to list those deductions on the employees' paystubs, and to remit to the Fund office those deducted dues and the monthly benefit contributions.

The Funds perform a number of functions, including verifying the employer's reports by periodically auditing the employer's payroll accounts. The Funds' auditors compare the employer's reports with its payroll and tax records. If the auditor detects an underpayment, the Funds' office bills the employer for the amount owed. Under the applicable agreements, the employer must pay 10% interest per annum on the delinquent contributions and, if the Funds must seek to compel payment, an additional 20% of the delinquent amount in liquidated damages. It must also pay the reasonable attorney's fees and costs incurred in any action to recover these amounts owed.

To qualify for health plan coverage, employees must meet certain minimum contribution requirements. For example, to qualify for a basic health insurance plan, an employee must work 700 hours per year of "covered" work, which is, 700 hours of work "covered" by the Agreements.

In an analysis of an employer's records, an auditor generally confirms which hours are "covered" by noting the number of hours for which union dues have been deducted from the total hours worked. Not all work is covered by the Agreements. For example, in the present case, "[a]ll residential, sewer/water hook-ups and emergency sewer/water repair work, including snow removal," is exempt from the obligations imposed by the Agreements. (Addendum to Short Form Agreement (dkt. no. 1-2).) An employer is supposed to deduct union dues only from "covered" hours but not from "exempt" hours.

The Funds conducted an audit of Walsh. Walsh's payroll records indicated that Walsh deducted union dues from all of the hours worked by its employees. Notwithstanding that fact, there seems to be no dispute that Walsh employees did some amount of exempt work. Patrick Walsh testified that the company misunderstood its duty to deduct union dues and overcollected, even as to exempt work. Although payroll records might indicate how many covered and how many exempt hours each employee worked, Walsh says that those records are no longer available because they were destroyed by flooding at its office. It does not appear that there is any reliable way to calculate what the total covered and exempt hours, respectively, were for Walsh's employees during the periods in question. I do not treat the over-withholding of union dues as estopping Walsh from contesting the amount of the covered contributions said to be due.

The parties agree that Walsh owes the Funds some amount of unpaid contributions, but they dispute how much is owed.

ERISA provides in relevant part that "every employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). "[O]nce a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the funds are nonetheless proper." Laborers' Pension Fund v. Res Envtl. Servs. Inc., 377 F.3d 735, 739 (7th Cir. 2004) (internal quotations and citations omitted). Stated differently, "where an ERISA fund plaintiff has provided proof of an employer's failure to pay fringe benefit contributions on behalf of its employees for work covered by a collective bargaining agreement, the burden shifts to the employer to produce evidence as to what work is not covered." Plumbers Local 98 Defined Benefit Pension Fund v. M & P Master Plumbers of Mich., Inc., 608 F. Supp. 2d 873, 881 (E.D. Mich. 2009).

While the Funds have the general benefit of this burden-shifting rule, it is predicated on the Funds' having produced "an apparently sound accounting suggesting that money is owed." Res. Envtl. Servs., Inc., 377 F.3d at 739. Here, the Funds relied on a purported audit of the defendants records (Exhibit 4). The audit report is summary and not self-explanatory, and the testimony of the Funds' witness was not helpful in explaining the report. It has the appearance of a statement of position or a demand as much as a product of reliable auditing procedures. Moreover, the information in the audit report is inconsistent with the defendant's remittance reports and payroll records, in evidence as defense Exhibits B and C. For example, the Funds' audit report for the month of January 2010 shows contributions due from Walsh for employee Curt Giles based on 120 hours worked. The remittance report from Walsh for the same month

indicates contributions remitted for 152 hours on behalf of Giles. Similar discrepancies are replete in the evidentiary record. Accordingly, I conclude that the Funds did not make a sufficient prima facie showing of money due to shift the burden of detailed explanation to Walsh.

Walsh does concede that money is owed, however, and I accept the concession. Based on the concession and in lieu of evidence sufficient to make a better calculation, I find that as of the time of trial Walsh owed contributions in the sum of $57,411.45. On this amount, interest is assessed at the rate of 10% per annum. For approximately ten months from November 2010 to the date of judgment, interest is assessed in the sum of $4,765.15.  The judgment will also include as liquidated damages 20% of the unpaid contributions, or $11,482.29. No evidence of reasonable attorney's fees and costs was submitted by the plaintiff.

Judgment shall enter in the plaintiffs' favor in the sum of $73,658.89.

It is SO ORDERED.


    /s/ George A. O'Toole, Jr.
United States District Judge